THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN
PATTERSON, Defendant-Appellant.

First District (3rd Division)    No. 1—91—0759

Opinion filed November 9, 1993.

Theodore Gottfried, of State Appellate Defender's Office, of Springfield, and Joshua Sachs, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Defendant, Melvin Patterson, was charged by indictment with armed violence, possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of cocaine and delivery of less than 1 gram of a controlled substance. Prior to trial, the State motioned for leave to amend the indictment to read more than 400 grams but less than 900 grams of cocaine, which was the original charge presented to the grand jury. Before the grand jury and at trial the State presented evidence that defendant had possession of 517 grams of cocaine at the time of his arrest. Over defendant's objection, the trial court allowed the State's motion to amend. A simultaneous double trial was held for defendant and codefendant Tracie Thomas (hereinafter Tracie). Defendant was tried by

a jury whereas Tracie waived her right to trial by jury and opted for a bench trial. The jury returned verdicts of guilty on the delivery and possession counts and not guilty on the count of armed violence. The trial court entered judgment on the verdicts and sentenced defendant to 3 years' imprisonment for the delivery and 13 years' imprisonment for the possession, both sentences to run concurrently. It is from the judgment of conviction that defendant now appeals to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603). Tracie is not a party to this appeal.

For the reasons which follow, we affirm in part and reverse in part and vacate in part and remand with directions.

## FACTUAL BACKGROUND

The Chicago police department, via its superintendent's narcotics hot line, had received information that the apartment building located at 6151 South Champlain Avenue was being used for drug trafficking. Thus, on December 28, 1988, at 2 p.m., Chicago police officers David Lemieux, Gerald Hamilton, Rendella Taylor and Quadir Dawan were conducting a plainclothes surveillance of the building. Officer Lemieux testified that after 20 minutes of observation the officers saw four or five men go up the building's stairs to the rear door of a small enclosed porch of a second-floor apartment, knock on the door and exchange money for something with the person who answered the door. Consequently, the officers decided that Officer Taylor should go to the same door and "try to make a controlled narcotics buy." Officer Taylor recounted that she then took $40 in cash, with prerecorded serial numbers, and proceeded to the rear door. At this time, Officer Hamilton stood under the stairwell to back up Officer Taylor, Officer Dawan was covering the front of the building and Officer Lemieux was watching the north side of the building.

Officer Taylor testified that she knocked on the rear door and defendant opened it and asked what she wanted. Officer Taylor responded that she wanted a "bag of girl," a slang term for cocaine. Defendant then reached for a large plastic bag which contained several small plastic bags and withdrew a single small bag and told Officer Taylor that its price was $25. Officer Taylor paid defendant and he gave her the bag and closed the door. Based on her experience as a police officer, Officer Taylor believed the bag contained cocaine. Officer Taylor then went halfway down the staircase and signalled to the other officers that she had made the buy.

Officers Hamilton and Dawan joined Officer Taylor on the porch and together the three proceeded to the rear door of the second-floor

apartment. Officer Hamilton knocked on the door, called out "police, police," forced the door open and then entered the apartment followed by the other two officers. Whereupon, Officer Taylor recovered a bag of suspect cocaine located near the door.

Officer Taylor recalled that defendant was initially in the kitchen and Tracie was in the kitchen doorway. Defendant then proceeded towards the front of the apartment but stopped when told to "freeze" by Officer Hamilton. Tracie also attempted to leave but was stopped by Officer Dawan. Both defendants were brought into the kitchen.

Officer Lemieux recollected that he then entered the apartment after retrieving a white Sears bag that Tracie had thrown out of one of the apartment's windows. The bag held a couple of scales, a sifter and a clear plastic bag which contained what he believed to be cocaine.

Throughout this time there were two small children, both under five years of age, present in a bedroom located near the kitchen. The police eventually moved them to the living room in the front of the apartment. Officer Taylor stated that a few minutes later defendant's mother, Toni Patterson (hereinafter Toni), and defendant's brother, Mark Patterson (hereinafter Mark), entered the dwelling.

Officer Lemieux recalled that Officer Hamilton read defendant his *Miranda* warning and heard defendant state with respect to Tracie that "she's just trying to protect me, it wasn't hers." Defendant also indicated to the police that none of his family members who lived in the building knew anything about his involvement with drugs. Officer Lemieux, Officer Hamilton and defendant then went to the bedroom where Tracie had thrown the bag out of the window. Defendant then proceeded towards the room's closet and said "it's over here." Officer Hamilton told defendant that he could not enter the closet and Officer Lemieux then pulled defendant aside. In a canvas bag in the closet were two fully loaded revolvers and 11 clear plastic bags of suspect cocaine. Tracie was then taken to the living room.

From a closet in the hallway, Officer Hamilton recovered a precision triple-beam laboratory scale and miscellaneous documents proving defendant's residency. A custodial search of defendant's person yielded an electronic "beeper" and $250 in cash, including the currency with the prerecorded serial numbers that Officer Taylor had earlier exchanged with defendant for cocaine. All items seized by the police were inventoried by Officer Hamilton.

Funmi Moka, a criminalist for the Chicago police department and a qualified expert in chemistry, testified that she weighed and tested the substances found at defendant's residence. The substances were grouped in three exhibits and each of these weighed .24 grams,

28.07 grams and 488.7 grams, respectively. Various tests performed on these samples indicated the presence of cocaine in each of them.

Defendant, Toni and Mark testified for the defense. Toni testified that she owns the two-flat building. Toni stated that she rents out the second floor as individual boarding rooms which have their own locks. Toni occupied the first-floor apartment. On the second floor, Mark lived in the front room, Moses Beatty had a room and Michael Thomas had the back unit. Michael Thomas is of no relation to Tracie. Toni further testified that Tracie did not rent a room and that defendant had rented a room in the past but had moved elsewhere about $1^1/2$ weeks prior to his arrest.

Contrary to the police version of the events attendant to defendants' arrest, Toni testified that she was in the kitchen eating breakfast with defendant at the time the police entered the domicile. Toni recollected that the police herded those present into the front room and asked for Melvin Patterson to identify himself, which defendant did. Defendant, Tracie, Mark and Toni were then handcuffed while the police searched the apartment. Toni stated that at no time did defendant acknowledge the narcotics were his. According to Toni, after the police took away defendant, Tracie and Mark, who were all taken away by the police in a squad car, they permitted her to return to her home. In addition, Toni said that Mark did not return home from police custody for about two hours.

At trial, Mark corroborated Toni's testimony and added that the police never identified themselves prior to breaking the door down. Mark further testified that the police held him at a police station for two to three hours after taking him from the apartment.

Defendant's testimony also confirms that given by Toni and Mark. In addition, defendant denied ever having sold drugs to Officer Taylor. Defendant denied admitting anything to the police or that he had pointed out the location of drugs, guns or anything, or having knowledge or possession of such things. Defendant further stated that the room he formerly occupied was completely empty at the time of his arrest with the exception of an air conditioner.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant argues that: (1) the trial court improperly permitted the State to amend the indictment to correct defects; and (2) the trial court improperly denied his motion to suppress evidence.

## OPINION

Defendant asserts that the trial court erred in allowing the State to amend the indictment to correct a fundamental rather than formal error in the charge. We agree.

Initially, the indictment returned by the grand jury charged defendant with possession with intent to deliver more than 15 grams but less than 100 grams of a controlled substance. As we noted above, defendant was arrested with 517 grams of substances containing cocaine. The record gives no information as to why an indictment was returned only on a reduced charge. Prior to trial, the prosecutor moved orally for leave to amend the indictment on its face to charge possession with intent to deliver more than 400 grams but less than 900 grams of a controlled substance. Over defendant's objection, the trial court allowed the motion and the indictment was amended by interlineation to reflect the greater charge.

■ Any amendment to an indictment must originate with the grand jury unless such amendment corrects only a formal defect in the charge. (*People v. Betts* (1979), 78 Ill. App. 3d 200, 397 N.E.2d 106.) A formal defect is one which does not alter the nature and elements of the offense charged. (*People v. Hirsh* (1991), 221 Ill. App. 3d 772, 582 N.E.2d 1228.) Section 111—5 of the Code of Criminal Procedure of 1963, which gives a list of formal defects, provides:

"An indictment, information or complaint which charges the commission of an offense in accordance with Section 111—3 of this Code shall not be dismissed and may be amended on motion by the State's Attorney of defendant at any time because of formal defects, including:

(a) Any miswriting, misspelling or grammatical error;

(b) Any misjoinder of the parties defendant;

(c) Any misjoinder of the offense charged;

(d) The presence of any unnecessary allegation;

(e) The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; or

(f) The use of alternative or disjunctive allegations as to the acts, means, intents or results charged." Ill. Rev. Stat. 1987, ch. 38, par. 111—5 (now 725 ILCS 5/111—5 (West 1992)).

The State posits that the decisions in *People v. Coleman* (1971), 49 Ill. 2d 565, 276 N.E.2d 721, and *People v. Cooper* (1981), 97 Ill. App. 3d 222, 422 N.E.2d 885, are controlling of the case *sub judice*. We do not think this is so.

In *Cooper*, the defendant was indicted for the murder of his wife. The indictment originally stated that stabbing was the means employed in the slaying. Prior to trial the indictment was amended to correctly reflect the fact that the victim was asphyxiated. In holding the amendment proper, our supreme court highlighted the fact that the defendant was informed of the "gist" of the offense and that the means was not an integral part of the crime.

In *Coleman*, the appellate court permitted the correction of an

indictment to indicate the victim's correct name, "Hamp Burks." The indictment originally stated the victim's name to be "Burt Hampton." In so holding, the *Coleman* court characterized the error as "a matter of form rather than substance." *Coleman*, 97 Ill. App. 3d at 225.

■ The instant case is clearly distinguishable from *Cooper* and *Coleman*. In *Cooper* and *Coleman*, only minor factual details of the crimes were changed. The correcting of a victim's name or the means utilized to dispatch him on the face of the indictment does not change the charge: whether one chokes or stabs, the crime remains first degree murder. However, in a drug case, the quantity of a controlled substance possessed by a defendant is an essential element of the charge, it is what defines both the crime and the punishment; there is a world of difference between one gram and one kilo. Consequently, we believe the trial court erred in permitting the State to materially change the indictment. Accordingly, we vacate defendant's conviction and sentence thereon for possession of more than 400 grams but less than 900 grams of a controlled substance. We remand this cause to the circuit court with directions to enter judgment on the lesser offense originally charged and hold a new sentencing hearing on that charge. However, nothing in this opinion disturbs the trial court's actions with respect to the delivery charge.

Still to be considered is defendant's contention that the trial court erred in denying his motion to suppress evidence because the police's search of the apartment violated his right to be free of unreasonable searches and seizures as guaranteed by the Federal and State Constitutions.[1] We cannot agree.

■ In general, both the fourth amendment and section 6 of article

---

[1]The fourth amendment to the United States Constitution, made applicable to the States through the due process clause of the fourteenth amendment (*Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684), provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

Section 6 of article I of the 1970 Illinois Constitution provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the

I of the 1970 Illinois Constitution prohibit the police from making warrantless, nonexigent entries into a private residence to make an arrest. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Foskey* (1990), 136 Ill. 2d 66, 554 N.E.2d 192.) Police officers are not prohibited from entering a home without a warrant if exigent or compelling circumstances exist that justify the entry. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032; *People v. Abney* (1980), 81 Ill. 2d 159, 166, 407 N.E.2d 543.) In such a situation the burden of demonstrating exigency requiring a warrantless search or arrest is on the State. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 749-50, 80 L. Ed. 2d 732, 742-43, 104 S. Ct. 2091, 2097; *Foskey*, 136 Ill. 2d at 75.

■ The Illinois Supreme Court in *People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677, put forth the following factors which may be employed in assessing the exigency of a given circumstance: (1) whether the offense under police investigation was recently committed; (2) whether there was any deliberate or unjustifiable delay by the police during which time a warrant might have been obtained; (3) whether the offense at issue is a grave one, particularly if it is one of violence; (4) whether the suspected offender was reasonably believed to be armed; (5) whether the police were acting upon a clear showing of probable cause; (6) whether there was a likelihood that the suspected offender would escape if not apprehended swiftly; (7) whether there was strong reason to believe the suspected offender was on the premises; and (8) whether the entry by the police, though nonconsensual, was made peaceably.

■ In determining whether the police acted reasonably, a court must look to the totality of the circumstances the police were confronted with at the time the entry was made. The circumstances must militate against delay and justify the decision to proceed without a warrant. The principle guiding such cases is reasonableness, and each case must turn on its own facts. *Foskey*, 136 Ill. 2d at 76-77; see also *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218.

■ In a case where neither the facts nor the credibility of the witnesses is at issue, the question of whether exigent circumstances were present is a legal one and a reviewing court will consider the question *de novo*. (*Abney*, 81 Ill. 2d at 168.) However, in a case such as the one *sub judice*, where the facts and credibility of witnesses are questioned, this court will not disturb the decision of a trial court on a motion to suppress unless that finding is determined to be clearly

---

place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

erroneous. *White*, 117 Ill. 2d at 209; see also *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.

■ Here, the trial judge found the police officers' testimony as to events to be accurate and we decline to second guess that determination. Consequently, we shall limit our review of the trial court's decision to the testimony it deemed credible.

After a careful review of the record, we find that a majority of the factors laid out in *White* were present at the time of the officers' entry into the apartment.

The first factor was met because defendant had sold cocaine to Officer Taylor only moments before the entry and arrest.

As to the second factor, we are convinced that there was no real delay during which the officers could have obtained a warrant.

With respect to the third factor, we find it was satisfied. While there was no violence involved in this drug transaction, narcotics trafficking is nevertheless a grave offense.

The fifth factor was met as there was a clear showing of probable cause, *viz.*, Officer Taylor purchased what she reasonably believed to be cocaine from defendant.

Regarding the seventh factor, we find it was fulfilled because the officers knew defendant was in the apartment as he had only moments before sold Officer Taylor suspect cocaine and they were maintaining continuous surveillance of the residence.

Finally, the eighth factor was met as the entry was peaceable.

In short, we fail to perceive any error in denying defendant's motion to suppress.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and vacated in part and remanded with directions.

Affirmed in part and reversed in part and vacated in part and remanded with directions.

CERDA and GREIMAN, JJ., concur.