# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Terry*, 2012 IL App (4th) 100205

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES L. TERRY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0205 |
| Filed | January 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The summary dismissal of defendant's *pro se* postconviction petition arising from his convictions for aggravated criminal sexual assault and unlawful use of weapons by a felon was affirmed, and the appellate court granted the motion to withdraw filed by the office of the State Appellate Defender where the claims raised were barred by *res judicata* or forfeiture, and even if they were not barred, they were frivolous and patently without merit. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 87-CF-859; the Hon. Jeffrey B. Ford, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Karen Munoz, and Lawrence Bapst, all of State Appellate Defender's Office, of Springfield, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.

Presiding Justice Turner and Justice Pope concurred in the judgment, with opinion.

**OPINION**

¶ 1    This appeal comes to us on the motion of the office of the State Appellate Defender (OSAD) to withdraw as counsel on appeal because no meritorious issues can be raised in this case. For the following reasons, we agree and affirm.

¶ 2                            I. BACKGROUND

¶ 3    In July 1987, defendant, James L. Terry, was indicted for aggravated criminal sexual assault, a Class X felony (Ill. Rev. Stat. 1987, ch. 38, ¶ 12-14(a)(1)), and unlawful use of weapons by a felon, a Class 3 felony (Ill. Rev. Stat. 1987, ch. 38,¶ 24-1.1). In October 1987, defendant was charged by information with two counts of aggravated criminal sexual assault and one count of unlawful use of weapons by a felon.

¶ 4    Following an October 1987 jury trial, defendant was found guilty of both offenses. He was later sentenced to a term of natural life for aggravated criminal sexual assault and to 10 years' imprisonment for unlawful use of weapons by a felon, to run concurrently.

¶ 5    Defendant appealed, arguing that the trial court (1) deprived him of his constitutional right to counsel of his choice by denying his request for a continuance for the purpose of retaining counsel; (2) erred by failing to admonish him of his right to proceed *pro se*; (3) erred by refusing to accept his waiver of his right to be present for the trial; (4) denied defendant a fair trial since the jury was improperly instructed as to the offense of aggravated criminal sexual assault because the necessary mental state was not incorporated into the jury instructions; (5) erred by allowing the trial to proceed on improperly joined offenses; and (6) improperly sentenced defendant. *People v. Terry*, 177 Ill. App. 3d 185, 532 N.E.2d 568 (1988).

¶ 6    In December 1988, this court affirmed defendant's convictions, finding (1) defendant was not entitled to a continuance to obtain new counsel; (2) defendant was not entitled to a *sua*

*sponte* admonition by the trial court regarding his right to represent himself; (3) any error in requiring defendant to be present at trial was harmless; (4) the mental state was not a necessary element of the issues instruction; (5) joinder of the offenses was not improper; and (6) defendant's prior rape conviction was properly considered a Class X felony for purposes of the habitual-offender statute. *Id.* Defendant's petition for leave to appeal was denied in June 1989. *People v. Terry*, 126 Ill. 2d 565, 541 N.E.2d 1114 (1989) (table).

¶ 7        In January 1991, defendant filed a petition for writ of *habeas corpus* with the federal district court, setting forth the same six claims he raised on direct appeal. In June 1991, the court dismissed defendant's sentencing claim as it was not subject to federal *habeas corpus* review and ordered the State to respond to the five remaining claims. In June 1993, the district court denied defendant's *habeas corpus* petition on its merits.

¶ 8        In February 2010, over 22 years after his convictions, defendant filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2008)) claiming the following: (1) the trial court denied him his sixth-amendment right to counsel of his choice and erroneously advised him that he was only entitled to representation from the public defender's office; (2) the trial court erred in allowing the prosecutor to amend the grand jury indictment without returning the matter to the grand jury; and (3) the July 9, 1987, indictment failed to charge the offense of aggravated criminal sexual assault, rendering it void.

¶ 9        Fourteen days after it was filed, the trial court summarily dismissed defendant's postconviction petition in a written order, finding defendant's claims frivolous and patently without merit. The court found defendant's claim that he was denied his sixth-amendment right to counsel of his choice was barred by the doctrine of *res judicata*, as the same issue had been raised and rejected both on direct appeal and in defendant's federal *habeas corpus* petition. Further, the court held that even absent *res judicata*, no constitutional error occurred. The court also noted in its dismissal order that defendant's last two claims could have been raised on direct appeal or in federal court and thus were *res judicata*. Further analyzing the claims, the court stated that defendant "does not cite any law saying that the State is not allowed to file new counts and then proceed with a preliminary hearing to determine probable cause." Last, the court found that the indictment sufficiently apprised defendant of the nature of the charges against him and was not deficient.

¶ 10       Defendant filed a timely *pro se* notice of appeal and OSAD was appointed to represent him. In February 2011, OSAD moved to withdraw, including in its motion a brief in conformity with the requirements of *Pennsylvania v. Finley*, 481 U.S. 551 (1987). The record shows service of the motion on defendant, who is currently in prison. On its own motion, this court granted defendant leave to file additional points and authorities by March 30, 2011. Defendant timely filed additional points and authorities. The State responded. After examining the record and executing our duties in accordance with *Finley*, we grant OSAD's motion and affirm the trial court's judgment.

¶ 11                                    II. ANALYSIS

¶ 12       OSAD moves for leave to withdraw as counsel on appeal because any request for review

would be frivolous and without merit. We agree.

¶ 13                            A. Timeliness of Trial Court's Dismissal

¶ 14        Under section 122-2.1(a)(2) of the Post-Conviction Hearing Act (725 ILCS 5/122-2.1(a)(2) (West 2010)), a trial court is required to examine a defendant's postconviction petition and enter an order on the petition within 90 days of the date it was filed and docketed. Upon determining the petition is frivolous and patently without merit, the court must provide defendant with a written order dismissing the petition within 10 days of its entry. 725 ILCS 5/122-2.1(a)(2) (West 2010). The order must specify the findings of fact and conclusions of law it made in reaching its decision. *Id.*

¶ 15        In this case, defendant filed his postconviction petition on February 3, 2010. On February 17, 2010, after examining the petition, the trial court determined it was frivolous and patently without merit, and dismissed it in a written order that specified the findings of fact and conclusions of law it made in reaching its decision. Notice of dismissal was sent to defendant on February 18, 2010, and defendant filed a timely notice of appeal on March 12, 2010. Because defendant's petition was dismissed 14 days after it was filed, and notice of its dismissal was sent to defendant 1 day after its entry, no colorable argument can be made that the trial court did not dismiss the petition within the statutory 90-day period.

¶ 16                            B. Defendant's Postconviction Petition

¶ 17        The Post-Conviction Hearing Act "provides a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial." *People v. Edwards*, 197 Ill. 2d 239, 243-44, 757 N.E.2d 442, 445 (2001). An action for postconviction relief is a collateral attack on the proceedings, not an appeal on the merits. *People v. Harris*, 206 Ill. 2d 1, 12, 794 N.E.2d 314, 323 (2002). "The purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *Id.* "Issues that were raised and decided on direct appeal are barred by the doctrine of *res judicata*. [Citations.] Issues that could have been presented on direct appeal, but were not, are waived." *Id.* at 12-13, 794 N.E.2d at 323. " '[W]here *res judicata* and forfeiture preclude a defendant from obtaining relief, such a claim is necessarily "frivolous" or "patently without merit." ' " *People v. Alcozer*, 241 Ill. 2d 248, 258-59, 948 N.E.2d 70, 77 (2011) (quoting *People v. Blair*, 215 Ill. 2d 427, 445, 831 N.E.2d 604, 616 (2005)). An otherwise meritorious claim has no basis in law if *res judicata* or forfeiture bar the claim. *Blair*, 215 Ill. 2d at 445, 831 N.E.2d at 615-16.

¶ 18        At the first stage of a postconviction proceeding, the trial court must independently review the petition within 90 days and determine whether it is frivolous or patently without merit. *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445. If the court determines the petition is subject to summary dismissal at the first stage, it must dismiss the petition in a written order. *Id.* This court has stated, "[t]o withstand dismissal at the first stage of postconviction proceedings, a *pro se* petition for postconviction relief need only contain a simple statement that presents the gist of a claim for relief when nothing in the trial record contradicts that

claim." (Internal quotation marks omitted.) *People v. Patton*, 315 Ill. App. 3d 968, 972, 735 N.E.2d 185, 189 (2000); see also *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445 ("The gist standard is a low threshold." (Internal quotation marks omitted.)) However, "decisions regarding the meaning of the 'gist' standard have arisen only outside the context of *res judicata* and forfeiture." *Blair*, 215 Ill. 2d at 446, 831 N.E.2d at 616.

¶ 19                                     1. *Defendant's Petition*

¶ 20        As an initial matter, the State points out in its brief that the defendant's petition did not comply with the requirements of the Post-Conviction Hearing Act and that the trial court's summary dismissal of defendant's petition was appropriate for this reason alone. We disagree.

¶ 21        Section 122-1(b) of the Act provides that "[t]he proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit." 725 ILCS 5/122-1(b) (West 2010). The State cites the Second District's decision in *People v. Carr*, 407 Ill. App. 3d 513, 515, 944 N.E.2d 859, 861 (2011) (citing *People v. Niezgoda*, 337 Ill. App. 3d 593, 597, 786 N.E.2d 256, 259 (2003)), for its proposition that "[a]ffidavits filed pursuant to the Act must be notarized to be valid." In *Carr*, the defendant filed a postconviction petition and attached an affidavit attesting to its truth. The *Carr* court found that because the affidavit was not notarized, it did not comply with the requirements of the Act and was properly dismissed at the first stage.

¶ 22        This court, however, is persuaded by the First District's decision in *People v. Henderson*, 2011 IL App (1st) 090923, 2011 WL 5838686, which held that while an affidavit filed pursuant to the Act must be notarized, the mere fact that the affidavit is not notarized does not justify its summary dismissal at the first stage. The *Henderson* court stressed that the standard for evaluating a postconviction petition at the first stage is whether the petition is " 'frivolous or patently without merit.' " *Id.* ¶ 33. "[A] petition is frivolous or patently without merit only if it has no arguable basis in law or fact, *i.e.*, the petition is based on an indisputably meritless legal theory or fanciful allegations." *Id.* Further, the *Henderson* court held "that the Act allows summary dismissal only where a defect renders a petition frivolous or patently without merit. By their traditional meaning, we do not find those terms would encompass the mere lack of notarization of a verification affidavit." *Id.* ¶ 34. The *Henderson* court was persuaded, as are we, "that the purposes of the Act and section 122-2.1 would be hindered by preventing petitions which are neither frivolous nor patently without merit from proceeding to the second stage due to the technicality [of not having a notarized affidavit]." *Id.* ¶ 35. The notarization issue is a more appropriate objection at the second stage. *Id.*

¶ 23        While we recognize that defendant's petition was not notarized, as it should have been, we conclude that the failure to attach a notarized affidavit to a postconviction petition is not an appropriate reason to summarily dismiss the petition at the first stage. We now turn to the other issues raised in defendant's postconviction petition and in the parties' briefs.

¶ 24                              *2. Sixth-Amendment Right-to-Counsel Claim*

¶ 25        Defendant argues in his "Traverse To Counsel's Motion To Withdraw Under Finley" that the trial court erred in summarily dismissing his postconviction petition because (1) the court used "an incorrect standard" in assessing his petition because it did not cite *People v. Hodges*, 234 Ill. 2d 1, 912 N.E.2d 1204 (2009), in its analysis; (2) the court violated *People v. Rivera*, 198 Ill. 2d 364, 763 N.E.2d 306 (2001), which forbids the partial summary dismissal of first-stage postconviction petitions, because its written order did not specifically mention the affidavit of defendant's mother attached to the petition or the allegation that the trial court incorrectly advised defendant, on the morning of trial, that "he was only entitled to representation from the Public Defender"; and (3) the affidavit from defendant's mother was *de hors* the record and thus was not barred by the doctrine of *res judicata*. We disagree with defendant on all claims.

¶ 26                              a. Summary Dismissal Standard

¶ 27        Defendant's argument that the trial court used "an incorrect standard" in assessing his petition because it did not cite to *People v. Hodges*, 234 Ill. 2d 1, 912 N.E.2d 1204 (2009), in its analysis is misguided. Defendant asserts that the trial court did not "undertake *any* analysis as required by *Hodges* to determine if any allegation of frivolous could be applied legally or factually to [his] claims." (Emphasis in original.) Defendant cites *Hodges* for the guideposts that should be used in the analysis of postconviction petition. *Hodges* stated: "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16, 912 N.E.2d at 1212. Specifically, defendant contends that his claim that the court refused to allow counsel of defendant's choosing to enter into the case is not contradicted by the record. We disagree.

¶ 28                              b. *Res Judicata*

¶ 29        Defendant's sixth-amendment right-to-counsel-of-choice claim is barred by the doctrine of *res judicata*, as it has already been raised and decided both on direct appeal and in his petition for a writ of *habeas corpus*. See *People v. Rissley*, 206 Ill. 2d 403, 412, 795 N.E.2d 174, 179 (2003) (an appellate court will not consider issues that it has already ruled on). A defendant may not avoid the bar of *res judicata* simply by rephrasing issues that have been previously addressed on direct appeal. *People v. Simpson*, 204 Ill. 2d 536, 559, 792 N.E.2d 265, 282 (2001). Further, a defendant cannot raise issues in a postconviction proceeding that have already been addressed pursuant to a federal *habeas corpus* petition. *People v. Peeples*, 184 Ill. App. 3d 206, 208, 539 N.E.2d 1376, 1377 (1989). Twenty-three years ago, on direct appeal, this court rejected defendant's claim that he was denied his right to counsel of choice. We stated:

        "Similarly, an analysis of the factors present in the current case establishes no abuse of discretion occurred [when the trial court denied a continuance to retain new counsel]. Defendant was represented by counsel for almost four months and at no time prior to the

day of trial complained about his representation, or indicated a desire to obtain other counsel. Defendant's only evidence that he could now obtain counsel was a representation that his parents suddenly decided the day before trial that they could help him. It appears defendant's father was in court at the time and, yet, made no statements to support his son's assertion. Further, defendant had no articulable reason for changing counsel other than the vague assertion that counsel could not devote 100% of his efforts to this case. This all leads to the inference that defendant's true motive was to delay the proceeding, an inference borne out by defendant's other conduct in initially refusing to change from his prison uniform to street clothes, and his desire to waive his presence from the trial. Finally, *** there [was] no identified counsel ready, willing, and able to immediately take over the case, which further supports the court's decision denying the requested continuance." *Terry*, 177 Ill. App. 3d at 190-91, 532 N.E.2d at 572-73.

¶ 30    The doctrines of *res judicata* and forfeiture will be relaxed only if one of the following three circumstances is present: (1) where fundamental fairness so requires; (2) where the forfeiture stems from the ineffective assistance of appellate counsel; or (3) where the facts relating to the claim do not appear on the face of the original appellate record. *Blair*, 215 Ill. 2d at 450-51, 831 N.E.2d at 619; *People v. Patterson*, 192 Ill. 2d 93, 139, 735 N.E.2d 616, 642 (2000). Where new evidence is relied upon, as in the third circumstance, the evidence must be (1) of such a conclusive character that it will probably change the result upon retrial; (2) material and not merely cumulative; (3) discovered since trial; and (4) of such character that it could not have been discovered prior to trial by the exercise of due diligence. *Patterson*, 192 Ill. 2d at 139, 735 N.E.2d at 642.

¶ 31                                  i. *Trial Dialogue*

¶ 32    On the morning defendant's jury trial was scheduled to begin, defendant appeared with his appointed counsel, Public Defender James Dedman, and asked for a continuance to retain private counsel. Defendant asked to have Dedman removed from the case, asserting that because of "the nature of [the] case and the seriousness of the crime," he did not feel it would be in his best interest to have Dedman continue representing him. Dedman clarified for the court that defendant was not "asking for somebody else in [the public defender's] office to represent him. He's asking for time to hire his own attorney." Dedman further argued that defendant was facing a serious charge and that the trial may be the most important thing that is going to occur in defendant's life. In light of the seriousness of the case and the potential prison sentence defendant faced, Dedman asked the court to consider granting defendant's motion, which would allow defendant time to find an attorney he would be confident in. In denying defendant's motion to continue, the court stated:

> "Of course, at any time since June 23rd, 1987, Mr. Terry, when you were arraigned upon these charges, you were always free to hire any attorney of your own choosing at your own expense in this matter if you wanted to do so. *** I have no reasonable expectation that if I were to grant your continuance that anything would be different in terms of your ability to be able to hire an attorney, since you certainly have not done so between June and today's date here in question. I think that this being the eve of trial, the parties ready,

Mr. Dedman ready on your behalf in this matter, the State having their witnesses ready, some of them coming in from out of state, Mr. Dedman has filed discovery answers on your behalf and interviewed witnesses or at his direction it's been done, he's a very competent attorney with a great deal of experience, you have no right under the law to have an attorney of your own choosing appointed on your behalf. Your rights are to have a representative from the Public Defender's Office."

Defendant responded that he did not personally have the money to hire an attorney, "but [he] talked to [his] parents yesterday [and] was informed that now it would be possible for [him] to hire an attorney of [his own] through them." Defendant further explained he wanted to hire an attorney that he felt confident with and who would have his best interest at heart, someone who was not "so backlogged with cases *** that he can[ ] put 100 percent effort in[to trying his case]."

¶ 33　　The trial court explained that it was not taking defendant's rights lightly but stated that defendant's "parents could have come in any time [since arraignment] and *** hired an attorney for [him] if they wanted to do so ***, but it hasn't been done. I intend to deny any continuance in this matter." The court verified with Dedman that he would be able to give his full and complete attention to the case during trial. Defendant interjected and the following conversation occurred:

"THE DEFENDANT: You say that since June my parents could have came and hired an attorney any time since that time; okay. See, you're assuming that any time since then that they had the money to do this, you see, which they didn't. If they had, they would have. They have my best interests at heart.

THE COURT: I'm sure they do, Mr. Terry.

THE DEFENDANT: Now by them coming to me yesterday and letting me know that hey, well, now we're in a position where we can hire a lawyer for you, since June until that date, I feel that they've been trying, and it just happens to be a matter of destiny that they only succeeded yesterday to come up with the amount of money to hire an attorney for me. It's not by design that they don't have this, you know. It's nothing but a matter of fate ***. ***

THE COURT: *** I've made my ruling in this case, and nothing you will say will change it.

THE DEFENDANT: So, you're denying me my choice of counsel. You're denying me my right to hire my own attorney. You're making me have a lawyer that I am not comfortable with, that I don't have any confidence with in this case.

THE COURT: I'm denying your request to continue, and the case is going to proceed to trial today's date."

¶ 34　　　　　　　　　　ii. *Defendant's Mother's Affidavit*

¶ 35　　Attached to defendant's postconviction petition was an affidavit from defendant's mother, Janis Terry, in which she declared the following: (1) she and her late husband, L.C. Terry, had "arranged to retain the services of Attorney Joel Silverman to represent" defendant

prior to the date defendant's jury trial commenced and that it had taken them "several months to come up with the required funds to pay Attorney Silverman"; (2) that she and her husband had been informed by the public defender that it was permissible to bring in new counsel prior to October 14, 1987, which was the date the State intended to file a new indictment; (3) that on the morning of the trial, defendant informed the court that he "wanted to hire his own attorney," but was told by the court " 'he only had a right to the public defender, and did not have a right to choose his own counsel' " and that defendant "went round and round with [the court], but the [court] stated that [it] was not going to allow [defendant] to hire his own lawyer, and that it was too late" and not to bring the matter up again; (4) that she spoke with a lawyer and "was told that the law was settled [and] *** that [defendant] had a clear right to counsel of his choice"; and (5) that she spoke to defendant and told him about "his having a right to counsel of his choice" and urged defendant to "get his case back in the courts to decide this issue, since had [defendant] had able counsel, he would never [have] been convicted of the crimes."

¶ 36        Defendant argues that "had the trial court considered the attached affidavit of [his] mother, and taken that evidence as 'true' and 'liberally' construed it as the Act required," then it should not have dismissed his postconviction petition because his "claim was supported with an affidavit which was *de hors* the trial and appellate records." See *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063, 1073 (1998). However, simply rephrasing the issue and attaching an affidavit to a postconviction petition 23 years after the issue was originally addressed does not avoid the bar of *res judicata*. *Simpson*, 204 Ill. 2d at 559, 792 N.E.2d at 282. In this case, the information contained in defendant's mother's affidavit was not new evidence that could not have been discovered prior to trial. If defendant's parents had actually hired Silverman to represent defendant prior to trial, they could have spoken up at the hearing. As this court observed on appeal, however, "Defendant's only evidence that he could now obtain counsel was a representation that his parents suddenly decided the day before trial they could help him. It appears defendant's father was in court at the time and, yet, made no statements to support his son's assertion." *Terry*, 177 Ill. App. 3d at 191, 532 N.E.2d at 572. Defendant's father spoke when the court was discussing whether defendant's handcuffs and shackles should be removed while the jury was present. According to defendant's mother's affidavit, she also was present in the courtroom on the date of the hearing, but she did not speak up to inform the court that they had actually hired Silverman to represent defendant either. Had defendant's parents retained Silverman to represent defendant, defendant and Dedman should have brought this up when it counted–at the hearing–rather than waiting 23 years after defendant's trial. In any case, if Silverman had been retained, this evidence would have been available prior to trial and, thus, does not fall under the newly discovered evidence exception.

¶ 37        In dismissing defendant's postconviction petition, the trial court quoted this court's opinion of defendant's direct appeal, distinguished the cases defendant cited and explicitly found that defendant's petition was frivolous and patently without merit. It does not follow that just because the court did not cite *Hodges*, it did not engage in the proper analysis. Absent an affirmative showing of error in the record, a trial judge is presumed to know and apply the law properly. *People v. Henderson*, 336 Ill. App. 3d 915, 922, 789 N.E.2d 774, 779

(2003). In fact, the court was not required to engage in any analysis whatsoever, once it determined that defendant's claim was barred by *res judicata*, which it did on the third page of its order, because a claim barred by *res judicata* has no basis in law and is necessarily frivolous and patently without merit. *Alcozer*, 241 Ill. 2d at 258-59, 948 N.E.2d at 77; *Blair*, 215 Ill. 2d at 446, 831 N.E.2d at 615-16.

¶ 38        3. *Defendant's Postconviction Petition Was Dismissed in Full*

¶ 39        Defendant next asserts in his "Traverse to Counsel's Motion To Withdraw Under *Finley*" that the trial court violated *People v. Rivera*, 198 Ill. 2d 364, 763 N.E.2d 306 (2001), by partially dismissing his petition because the court did not "mention" his mother's affidavit in its order and did not address his assertion that the trial judge erroneously advised him that he was only entitled to representation by the public defender. In *Rivera*, the trial court dismissed four claims as frivolous or patently without merit, but it found that two of the claims stated the gist of constitutional violations and advanced those two claims to the second stage of postconviction review. *Id.* at 366, 763 N.E.2d at 307-08. On review, the Illinois Supreme Court held that the plain language of the statute does not allow for partial summary dismissals. *Id.* at 370-72, 763 N.E.2d at 310-11. Defendant contends that both of his issues are "distinct claims *** raised in the postconviction petition," and because the court did not mention these issues in its dismissal order, the order amounted to a partial dismissal. We disagree.

¶ 40        Defendant claimed in his postconviction petition that the "trial court denied [him] his Sixth Amendment right to counsel of his choice, and erroneously advise[d him] that he was only entitled to representation from the Public Defender." In support of this assertion, defendant submitted his mother's affidavit (discussed in detail above) to show that his "family had secured the necessary funds" to hire counsel and that the trial court told defendant that "he only had a right to the public defender, and did not have a right to choose his own counsel."

¶ 41        The record shows that the trial court may have initially misunderstood defendant's request for new counsel, as the court told defendant "you have no right under the law to have an attorney of your own choosing *appointed* on your behalf. Your rights are to have a representative from the Public Defender's Office." (Emphasis added.) However, defendant has failed to show that this initial misunderstanding resulted in an arguable violation of his constitutional rights. Nonfactual and nonspecific assertions that merely amount to conclusions are not sufficient to require a hearing under the Post-Conviction Hearing Act. *People v. Torres*, 228 Ill. 2d 382, 394, 888 N.E.2d 91, 100 (2008). In fact, Dedman clarified for the court that defendant was not "asking for somebody else in [the public defender's] office to represent him. He's asking for time to hire his own attorney." The defendant's dialogue with the court, as presented above, shows that he knew he had the right to hire private representation of his choice if the court granted the motion for a continuance. The record directly contradicts defendant's claim that he was denied his right to counsel of choice in violation of his sixth-amendment rights. See *Torres*, 228 Ill. 2d at 394, 888 N.E.2d at 100 (The supreme court has consistently upheld the dismissal of a postconviction petition when

the allegations are contradicted by the record from the original trial proceedings.).

¶ 42    In addition, contrary to defendant's claim, the trial court did "mention" his mother's affidavit in its order, stating "On the issue of counsel of choice, *** [defendant] further attache[d] an affidavit of his mother." The record refuted the assertions in her affidavit. As we hinted earlier, had Silverman been retained by defendant's parents, either defendant, his parents (who were present during the hearing), or Dedman would have mentioned this fact to the trial court during the dialogue that occurred on this issue. Instead, defendant stated "I would like a continuance to a time that *would allow me to hire a private attorney*." (Emphasis added.) When the court asked defendant if he would like to add anything further, he stated "[n]ot at this time." A short time later, defendant stated that he had spoken to his parents the day before and he "was informed that now it *would be possible for me to hire an attorney of my own*" and "I'm asking, *to acquire an attorney that I feel confident with ***.*" (Emphases added.) Further, Dedman stated "He's asking for time to *hire his own attorney*" and "perhaps the [c]ourt should consider granting [defendant's] request to see *if he's able to find an attorney* on his own." (Emphases added.) Throughout this entire dialogue, not one person mentioned that Silverman had already been hired to represent defendant, which someone likely would have done if that was the case. Additionally, this court noted on appeal that there was "no identified counsel ready, willing, and able to immediately take over the case, which further supports the court's decision in denying the requested continuance." *Terry*, 177 Ill. App. 3d at 191, 532 N.E.2d at 572-73 (citing *People v. Free*, 112 Ill. App. 3d 449, 455 N.E.2d 529 (1983), and *People v. Koss*, 52 Ill. App. 3d 605, 607-08, 367 N.E.2d 1040, 1041 (1977)).

¶ 43    Unlike *Rivera*, where the court dismissed four claims and expressly advanced two claims to the second stage of review, the trial court here dismissed defendant's petition in whole, not in part. Contrary to defendant's assertion, the postconviction court's summary dismissal was appropriate.

¶ 44                              C. The Indictment and Information

¶ 45    Defendant's second contention in his postconviction petition is that "the [t]rial court unlawfully allowed the State to [a]mend the [g]rand [j]ury [i]ndictment, without returning the matter before the [g]rand [j]ury as an [*sic*] means of broadening the indictment as returned." Defendant's final contention is that "[t]he [i]ndictment of July 9, 1987[,] failed to charge the offense of [a]ggravated [s]exual [a]ssault, and is therefore defective and void."

¶ 46                              1. *Forfeiture of Claims*

¶ 47    We first note that defendant has forfeited these claims by failing to present them on direct appeal. See *Harris*, 206 Ill. 2d at 12-13, 794 N.E.2d at 323 ("Issues that could have been presented on direct appeal, but were not, are waived."). As mentioned *supra*, "[t]he purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *Harris*, 206 Ill. 2d at 12, 794 N.E.2d at 323. Here, defendant's direct appeal contained six claims, none of which dealt with the State amending the grand

-11-

jury indictment, or failing to properly charge him with aggravated sexual assault.

¶ 48 Even if we were to determine that defendant has not forfeited these issues–which we do not–no colorable argument can be made that defendant presented the "gist" of a constitutional claim.

¶ 49                 2. *The State Did Not Unlawfully Amend the Grand Jury Indictment*

¶ 50 Where a defendant is charged by indictment, the State is precluded from amending the indictment, except to cure formal defects. *People v. Kincaid*, 87 Ill. 2d 107, 122, 429 N.E.2d 508, 514 (1981). Where an amendment is substantive, the State is required to either return to the grand jury for a further indictment, *or* to file an information followed by a preliminary hearing or obtain a waiver of a preliminary hearing. *People v. Cregar*, 172 Ill. App. 3d 807, 818, 526 N.E.2d 1376, 1384 (1988). An amendment is substantive if it alters an essential element of the offense for which the accused was indicted. *People v. Patterson*, 267 Ill. App. 3d 933, 939, 642 N.E.2d 866, 870 (1994).

¶ 51 In this case, the original indictment charged defendant with the offenses of aggravated criminal sexual assault and unlawful use of a weapon by a felon. A subsequent information was filed, charging defendant with the same two offenses, with some language changed, and adding an additional count of aggravated criminal sexual assault. The indictment for the weapons charge stated that defendant "knowingly possessed a knife, with the intent to use it unlawfully." The subsequent information stated that "defendant knowingly possessed *on or about his person a dangerous knife*, with the intent to use it unlawfully." (Emphases added.) The indictment for sexual assault stated "defendant while displaying a dangerous weapon, a knife, committed [c]riminal [s]exual [a]ssault *** in that by the use of force the defendant placed his penis in the vagina of [the victim]." The subsequent information stated "defendant while displaying a dangerous weapon, a knife, committed criminal sexual assault *** in that by the use of force the defendant *committed an act of sexual penetration, in that* the defendant placed his penis in the vagina of [the victim]," and added in the second information "by the *threat* of use of force." (Emphases added.)

¶ 52 Here, after the State filed an information charging defendant with the three counts, the trial court held a preliminary hearing prior to the jury trial, finding probable cause on all counts. Even if defendant had not forfeited this claim for failing to raise it on direct appeal, no meritorious argument can be made that the trial court erred in allowing the prosecutor to file the charges by information and preliminary hearing.

¶ 53                 3. *The Indictment Adequately Charged the Offense*
                          *of Aggravated Criminal Sexual Assault*

¶ 54 Aggravated criminal sexual assault is committed when, in committing a criminal sexual assault, the defendant "displayed, threatened to use, or used a dangerous weapon, other than a firearm." 720 ILCS 5/12-14(a)(1) (West 2010) (formerly Ill. Rev. Stat. 1987, ch. 38, ¶ 12-14(a)(1)). Criminal sexual assault requires an act of sexual penetration by the use of force or threat of force. 720 ILCS 5/12-13(a)(1) (West 2010) (formerly Ill. Rev. Stat. 1987, ch. 38,

¶ 12-13(a)(1)).

¶ 55    The indictment against defendant alleged that "defendant while displaying a dangerous weapon, a knife, committed [c]riminal [s]exual [a]ssault *** in that by the use of force the defendant placed his penis in the vagina of [the victim]." In this case, the indictment listed all of the elements of the offense of aggravated criminal sexual assault and put defendant on notice of the charges against him. Additionally, defendant was later charged by an information, which contained all of the elements necessary as well. Even if defendant had not forfeited this claim, no colorable argument can be made that the indictment was insufficient.

¶ 56                                III. CONCLUSION

¶ 57    Defendant's claims in his postconviction petition were raised, or could have been raised, on direct appeal and/or on his petition for *habeas corpus* relief. Therefore, his claims are barred by the doctrines of *res judicata* and forfeiture. However, even if these claims were not barred, the trial court properly found them to be frivolous and patently without merit. For the reasons stated, we grant OSAD's motion to withdraw as counsel for defendant and affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 58    Affirmed.