2020 IL App (1st) 171027-U

FIRST DISTRICT
FIRST DIVISION
September 8, 2020

No. 1-17-1027

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 CR 150073 (03) |
| | ) | |
| BIANCA RODRIGUEZ, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial counsel's failure to object to amendment to correct formal defect in the indictment did not constitute ineffective assistance.

¶ 2    Following a bench trial, defendant Bianca Rodriguez was convicted of obstructing justice for knowingly concealing the vehicle used during a shooting in the parking lot of a liquor store. The trial court sentenced defendant to 30 months' probation, 3 months' imprisonment (time considered served), and 100 hours of community service. On appeal, defendant claims that her counsel was ineffective for not objecting to the State's amendment to the indictment, arguing the

amendment improperly broadened the scope of the charge against her. For the reasons that follow, we affirm.

¶ 3                                  BACKGROUND

¶ 4        Defendant was charged with obstructing justice for knowingly concealing physical evidence. Co-defendants Ronnie Henderson and Valentine Rodriguez were charged with first-degree murder, aggravated discharge of a firearm, and aggravated assault in connection with the same occurrence.

¶ 5        Prior to trial, the State moved to amend the indictment to conform with the language of the statute.[1] 720 ILCS 5/31-4(a)(1) (West 2014). The motion was allowed, without objection. The amended indictment (with the State's additions in brackets) stated, as follows:

> "Bianca Rodriguez committed the offense of obstructing justice in that she, with the intent to prevent the apprehension [or obstruct the prosecution or defense of any person] of Ronnie Henderson and Valentin[e] Rodriguez, knowingly [destroys, alters or disguises physical evidence] concealed physical evidence, to wit: hid the vehicle used in the shooting."

¶ 6        Dontay Bryant testified that on August 21, 2015, he was working as a security guard at Ice House liquor store, located at 358 North Cicero, with his partner, Jose Sepulveda (Sepulveda). Shortly after 2 a.m., a white Kia drove into the parking lot, and two Hispanic males exited the vehicle and entered the liquor store. As they emerged from the store, a black Infiniti SUV (SUV) with four passengers pulled up in front of the Kia. Words were exchanged between the two Hispanic males and two of the passengers in the SUV. At that point, a black male seated in the rear passenger seat of the SUV leaned out the window and fired a shot at the two Hispanic males. As

---

[1]As noted by the State, the amendment also conformed with the language of Illinois Pattern Jury Instructions.

the two Hispanic males were running towards their vehicle, the SUV began exiting the parking lot. Bryant yelled for the SUV to stop. In response, the vehicle "floored toward [Bryant] and his partner." Bryant fired four shots at the SUV. He does not know how many shots Sepulveda fired. After the shots were fired, the SUV fled northbound on Cicero.

¶ 7    On August 21, 2015, Chief Patrick Fitzmaurice (Fitzmaurice), a paramedic for the Chicago Fire Department, was working at the firehouse located a few blocks from the Ice House liquor store. Shortly after 2 a.m., he heard "a call on the zone radio for shots fired at Cicero and Lake." A few minutes later, a black SUV pulled up to the firehouse. A Hispanic male and defendant got out of the SUV and said that "somebody in the car [had] been shot." Fitzmaurice looked in the backseat of the SUV and saw a Hispanic female with "a catastrophic head injury."[2]

¶ 8    Fitzmaurice observed that three of the four occupants of the SUV had gunshot wounds. He helped get everyone out of the SUV, called for additional transport ambulances, and radioed "the police to come to the scene."

¶ 9    Before the police arrived, Fitzmaurice noticed defendant moving towards the SUV and told her "you can't go in the car." He heard the black man tell defendant to "get in the car, you have to get out of here, you have to get the car out of here." Defendant continued walking towards the SUV and Fitzmaurice told her again "you can't go there *** no one is leaving here." The Hispanic male (later identified as defendant's husband) told defendant to "get the f*cking car out of here. You got to get the f*cking car out of here." Defendant "spun around so fast *** jumped in the car, floored it straight west down Chicago Avenue at high speeds" and blew through two traffic lights.

¶ 10    Later that morning, Officer Jose Lomelli (Lomelli) responded to a call about "a suspicious auto" at 1415 North Kilpatrick, an isolated area of the city without much traffic. Upon arrival,

---

[2]The Hispanic female later died at the hospital.

3

Lomelli saw a black Infiniti SUV with shattered windows and multiple bullet holes. He ran the license plate and learned that the vehicle was wanted in a criminal investigation and was registered to defendant.

¶ 11    Shortly thereafter, defendant was arrested, given her *Miranda* warnings, and agreed to speak to Detective Steven DeSalvo (DeSalvo). Defendant stated that at the time of the incident, "she had been intoxicated and she was scared." She knew that "there was weed and booze in the vehicle." When "Ronnie [co-defendant Ronnie Henderson] told her to go, go *** she jumped in the vehicle and drove it away." Prior to leaving the vehicle "someplace off of North Avenue," she "tossed out" the weed and booze.

¶ 12    Officer James Obaldo, an evidence technician with the Chicago Police Department, processed the SUV, which had shattered windows, more than 10 bullet holes, and blood stains on the seats and steering wheel. He also retrieved three fired bullets from inside the SUV. No guns, fired cartridge cases, alcohol, or cannabis were recovered from the vehicle.

¶ 13    Defendant was found guilty of obstructing justice and sentenced to 30 months' probation, 3 months' imprisonment (time considered served), and 100 hours of community service.

¶ 14                                                   ANALYSIS

¶ 15    Defendant claims that trial counsel provided ineffective assistance by not objecting to the State's motion to amend the indictment, arguing that adding the language "obstruct the prosecution or defense of any person" broadened the scope of the charge against her.

¶ 16    The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11. Under *Strickland*, a defendant asserting ineffective assistance of counsel must show that "(1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance,

there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 687). The failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *Id.* at ¶ 91.

¶ 17     To address defendant's claim, we must first determine whether the amendment to the indictment was formal or substantive. Under section 111-5 of the Illinois Code of Criminal Procedure (725 ILCS 5/111-5 (West 2014)), an indictment "may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including:

> (a) Any miswriting, misspelling or grammatical error;
> (b) Any misjoinder of the parties defendant;
> (c) Any misjoinder of the offense charged;
> (d) The presence of any unnecessary allegation;
> (e) The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; or
> (f) The use of alternative or disjunctive allegations as to the acts, means, intents or results charged." *Id.*

¶ 18     The formal defects set forth in section 111-5 are not an exclusive list. *People v. Benitez*, 169 Ill. 2d 245, 255 (1996). An amendment correcting a formal defect involves a change that "is not material or does not alter the nature and elements of the offense charged." *People v. Flores*, 250 Ill. App. 3d 399, 401 (1993). Formal amendments do not require the indictment to be returned to the grand jury. *People v. Patterson*, 267 Ill. App. 3d 933, 938 (1994). In contrast, a substantive amendment involves "[a]ny attempt to broaden the scope of the indictment, alter or change the offense charged, or change a material element of the indictment [and] requires return of the indictment to the grand jury." *People v. Griggs*, 152 Ill. 2d 1, 32 (1992). A trial court's ruling allowing an amendment to the indictment is reviewed for an abuse of discretion. *People v. Ross*, 395 Ill. App. 3d 660, 668 (2009). An abuse of discretion "only occurs where no reasonable person would take the position adopted by the circuit court." *Peach v. McGovern*, 2019 IL 123156, ¶ 25.

¶ 19      Here, the indictment was amended before trial to correct a formal defect. Contrary to defendant's claim, the amendment did not "broaden the scope of the indictment, alter or change the offense charged, or change a material element of the indictment." *People v. Griggs*, 152 Ill. 2d 1, 32 (1992); see *contra People v. Zajac,* 244 Ill. App. 3d 42, 44 (1991) (substitution of a subsection constituted a substantive amendment because each subsection was a distinct statutory offense requiring proof of different elements); *People v. Patterson,* 267 Ill. App. 3d 933, 939 (1994) (amendment increasing the amount of controlled substance possessed in a drug case was substantive because the quantity possessed defined the crime and punishment); *People v. Betts*, 78 Ill. App. 3d 200, 204 (1979) (amendment that changed the penalty for the charged offense was substantive).

¶ 20      The nature, elements, and penalty for the charged offense were not changed by amending the indictment to include the full text of the statute defendant was already charged with violating. Since defendant was aware of the actual charge and possible penalty at all times, she cannot reasonably claim surprise or prejudice by virtue of the amendment. See *People v. Flores,* 250 Ill. App. 3d 399, 403 (1993) (amendment held to be formal rather than substantive where "there was no hint of surprise or prejudice to defendant by its allowance.").

¶ 21      Having determined that the amendment corrected a formal defect in the indictment, it follows that any objection to the State's motion would have been futile. Under these circumstances, defense counsel's failure to object does not constitute deficient performance. See *People v. Jackson*, 2020 IL 124112, ¶ 106 (quoting *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991)) (" 'trial strategy encompasses decisions such as what matters to object to and when to object.' "). Accordingly, defendant has failed to establish the first prong of the *Strickland* test. See *People v. Dupree*, 2018 IL 122307, ¶ 44 (defendant asserting ineffective assistance of counsel bears the

burden of overcoming "the strong presumption that any challenged action or inaction may have been the product of sound trial strategy.").

¶ 22 Defendant's challenge to trial counsel's performance also fails under the second prong of *Strickland*. The evidence clearly establishes that defendant obstructed justice by intentionally concealing a vehicle involved in a shooting. In light of the overwhelming evidence of defendant's guilt, there is no probability that the outcome of her trial would have been different if counsel had objected to amending the indictment. See *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694) (" 'reasonable probability' is defined as a 'probability sufficient to undermine confidence in the outcome.' "). For all of the reasons set forth herein, defendant's ineffective assistance of counsel claim is without merit.

¶ 23 CONCLUSION

¶ 24 Defendant's conviction for obstructing justice is affirmed.

¶ 25 Affirmed.